**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re: | |
| LAKE LOVELAND DERMATOLOGY P.C. | Case No. 19-11659 MER |
| | Chapter 11 |
| Debtor. | |

## ORDER

THIS MATTER comes before the Court upon Debtor Lake Loveland Dermatology, P.C.'s ("**Lake Loveland's**") Motion to Compel Immediate Payment of Post-Petition Rent Obligations for Both Lease Agreements with 790 Eisenhower, LLC ("**Landlord**").[1]

Previously, Lake Loveland filed a Motion to Reject Lease Agreement[2] with Landlord pertaining to property leased by Lake Loveland from Landlord located in Greeley, Colorado ("**Greeley Lease**"). Landlord did not oppose rejection of the subject lease, but demanded any order rejecting the lease provide for immediate payment of post-petition obligations, as well as to request 45 days to file its claim for rejection damages.[3] At a hearing held May 8, 2019, the Court granted the Motion to Reject in part, specifically reserving ruling with respect to the issue of payment of post-petition obligations arising from the Greeley Lease.[4]

Through the Motion to Compel, Landlord now directly seeks payment of the post-petition obligations arising from the Greeley Lease. The Motion to Compel further seeks equivalent relief with respect to a lease the Debtor has not yet moved to reject, for property located in Loveland, Colorado ("**Loveland Lease**").

---

[1] ECF No. 68 ("**Motion to Compel**").

[2] ECF No. 25 ("**Motion to Reject**").

[3] *See* ECF No. 52.

[4] *See* ECF No. 76.

As to both the Greeley Lease and the Loveland Lease, the post-petition obligations represent amounts the Landlord asserts Lake Loveland is obligated to pay on account of Lake Loveland's post-petition use and possession of Landlord's premises.  Landlord asserts Lake Loveland is in post-petition default of both leases for failure to pay rent for the months of March and April 2019, as well as failure to pay all post-petition utility bills ("**Post-Petition Obligations**").  In support of its request for immediate payment of Post-Petition Obligations, Landlord relies upon 11 U.S.C. § 365(d)(3),[5] which mandates debtors-in-possession "shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title."

Pursuant to § 365(d)(3), "lessors, as opposed to typical administrative expense claimants under § 503(b)(1), are not required to establish value or prove a benefit to the estate to establish the amount of their claim, but rather are entitled to current payment of the amounts required under their leases."[6]  In *In re Furr's Supermarkets, Inc.*, the 10th Circuit Bankruptcy Appellate Panel adopted the so-called "proration rule" for interpreting § 365(d)(3), under which "lessors are entitled to lease payments under § 365(d)(3) arising during and attributable to the period after the order for relief . . . ."[7]  The Bankruptcy Appellate Panel reasoned:

> Prior to 1984, landlords whose leases had neither been rejected nor assumed had to seek payment of current postpetition rents as administrative expenses (on notice and hearing) pursuant to § 503.  This was rightly perceived as an injustice to these essentially involuntary creditors whom Congress deemed to be entitled to "current" payment. . . . Section 365(d)(3) was enacted to require the debtor in possession or trustee to pay current rent obligations as they came due without being subject to the requirements of § 503(b).  We view this as a balancing of the debtor's or trustee's need to retain the leasehold and the creditor's inability to evict the debtor or trustee during the § 365(d)(4) period.  Consistent with this, we hold that lease obligations "arise" under § 365(d)(3) as the obligations accrue, not simply when they are billed, and that the debtor or trustee is required to pay only those lease obligations that accrue after the

---

[5] Unless otherwise specified, all references herein to "Section," "§" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq*.

[6] *In re Furr's Supermarkets, Inc.*, 283 B.R. 60, 65 (B.A.P. 10th Cir. 2002).

[7] *Id.* at 66.

2

Conversion Date[8] and prior to the date of rejection or assumption.[9]

The Court agrees with and adopts the reasoning and holding of the Bankruptcy Appellate Panel in *In re Furr's Supermarkets*. Pursuant to § 365(d)(3), obligations which arise under an unexpired lease of nonresidential real property must be paid current until assumption or rejection. In this context, "current" payment means payment "at the time required in the lease."[10] Lake Loveland cannot defer payment of the Post-Petition Obligations without perpetuating an ongoing default of a due and owing post-petition obligation. This obligation arises from a leasehold interest Landlord was involuntarily mandated to continue providing post-petition pursuant to § 362. Any other result would directly contravene the purpose and effect of § 365(d)(3) by permitting Lake Loveland to retain the benefits of the lease without performing its post-petition obligations under the lease.

For these reasons the Motion to Compel is GRANTED. Lake Loveland shall forthwith pay Landlord $8,338.40 which represents Post-Petition Obligations under the Greeley Lease.

Further, the Court concludes Landlord is entitled to charge reasonable attorneys' fees pursuant to the Greeley Lease. Within seven (7) days of this Order, Lake Loveland may object to the reasonableness of Landlord's attorneys' fees in the amount of $2,349.47. If no such objection is filed, Lake Loveland shall forthwith pay the attorneys' fees to Landlord. If an objection is filed, the Court will address the objection in the ordinary course.

Finally, Debtor shall promptly cure any post-petition default on the Loveland Lease and shall remain current on future post-petition obligations

---

[8] The facts in *In re Furr's Supermarket* involved proration of § 365(d)(3) claims for post-petition rent following conversion from Chapter 11 to Chapter 7. While the conversion date was the critical juncture for proration in *Furr's Supermarket*, there has been no conversion in this case, and therefore, for this analysis, the relevant point in time after which § 365(d)(3) claims may arise is the petition date, not a conversion date. For purposes of applying *Furr's Supermarket* to the facts of this case, the distinction is without a difference.

[9] *Id.* at 69-70. (citing 30 Cong. Rec. S8887, 8895 (daily ed. June 29, 1984) (statement of Sen. Hatch) ("The bill would lessen these problems by requiring the trustee to perform *all* the obligations of the debtor under a lease of nonresidential real property *at the time required in the lease.* This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease") (emphasis added).

[10] *Id.*

under the Loveland Lease until assumption or rejection by paying charges incurred at the time required in the Loveland Lease.

    SO ORDERED.

Dated June 14, 2019                BY THE COURT:

Michael E. Romero, Chief Judge
United States Bankruptcy Court